JAMES L. KIRK,

        Petitioner,

    v.                              Case No. 19-C-1792

PAUL KEMPER,

        Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

On May 28, 2015, a Kenosha County jury convicted James L. Kirk of one count each of possession with intent to deliver THC, manufacturing THC, possession of heroin with intent to deliver, maintaining a drug trafficking place, possession of cocaine, possession of narcotic drugs, and possession of drug paraphernalia, as well as two counts of felon in possession of a firearm. The court then sentenced Kirk to a total of ten years of initial confinement and five years of extended supervision, with ten years of probation consecutive to his prison sentence. On December 6, 2019, after his conviction and the order denying his post-conviction motion were affirmed on direct appeal by the Wisconsin Court of Appeals and the Wisconsin Supreme Court denied his petition for review, Kirk filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court seeking federal relief. Kirk asserts six grounds for relief based on purported violations of his rights under the Fourth and/or Fourteenth Amendments of the United States Constitution: (1) the no-knock search was unreasonable; (2) the search warrant was not based on probable cause; (3) the trial court lacked jurisdiction; (4) prosecutorial misconduct; (5) judicial bias during his trial and post-conviction proceedings; and (6) ineffective assistance of trial

and appellate counsel. For the reasons that follow, Kirk's petition will be denied and the case dismissed.

## BACKGROUND

The charges against Kirk grew out of the execution of a search warrant at his home on January 12, 2014. In the course of the search, police found marijuana, cocaine, heroin, drug paraphernalia, and two guns. Kirk later gave a statement admitting nearly all of the elements of the crimes with which he was charged. Dkt. No. 17-4 at 2–3.

Prior to trial, Kirk moved to suppress the evidence seized in the search on the ground that the warrant was unlawful because police had failed to disclose to the issuing magistrate the fact that Alexia Bruntzel, who provided most of the information on which the warrant was based, had been arrested on a probation warrant and, thus, had a motive to fabricate. Kirk argued that the affidavit submitted by the officers in support of their warrant application made Bruntzel look like a citizen witness who had voluntarily come forward to assist police. He claimed that the failure to disclose that Bruntzel had been arrested rendered the warrant invalid. The trial court denied the motion holding that the undisclosed fact did not undermine the finding of probable cause or render the warrant invalid. Dkt. No. 17-22 at 14. The case then proceeded to trial.

At trial Bruntzel testified that she was a heroin addict and that Kirk was her supplier. Bruntzel testified that she had purchased heroin from Kirk at his home twice on January 11, 2014. On both occasions, Kirk retrieved the heroin from the basement where Kirk's bedroom and a small office were located. Bruntzel testified that when she first went to Kirk's house at about 9:00 or 10:00 a.m., she watched Kirk retrieve the heroin from a file cabinet, weigh and package it, and hand it to her in return for $40. She immediately injected it while still in Kirk's basement. Bruntzel testified she returned to buy more heroin from Kirk at about 2:00 p.m. Bruntzel also testified that

2

Kirk told her he was growing around 500 pounds of marijuana outside the city and stored some in the attic of his garage which he was selling in quarter-pound quantities. Dkt. No. 17-24 at 118–28.

The testimony of the police officers who executed the search warrant on Kirk's residence and the lab analyst who tested the variety of drugs that were seized corroborated Bruntzel's testimony, as well as Kirk's confession. Kirk did not testify. Not surprisingly given this evidence, the jury returned a verdict of guilty on all counts.

Kirk filed a post-conviction motion for a new trial, arguing that the evidence seized in the search of his residence should have been suppressed because the police entered his residence without complying with the rule requiring that they announce their presence and advise him of the warrant. In short, the police conducted a "no-knock" entry without prior authorization. Kirk claimed his trial counsel was ineffective in failing to raise the issue before trial. His trial attorney conceded he simply missed the issue. Following an evidentiary hearing, the trial court denied the motion on the ground that even if the issue had been raised, it would not have resulted in suppression of the evidence. The court held that under Wisconsin law, prior authorization is not needed to execute a search warrant without knocking when the officers have a reasonable suspicion that such an entry is necessary to prevent the destruction of evidence or injury to the officers. The court concluded that the evidence in the case gave rise to such a suspicion and thus no violation had occurred. Dkt. No. 17-27 at 36–37.

Kirk's post-conviction attorney filed a no-merit report with the Wisconsin Court of Appeals pursuant to *Anders v. California*, 386 U.S. 738 (1967). In addition to the issues concerning the search warrant and its execution, counsel addressed the sufficiency of the evidence and the sentence imposed by the trial court. Counsel argued that neither these issues, nor any

raised by Kirk in response to his no-merit report, had any arguable merit. The court of appeals agreed and summarily affirmed the conviction and order denying his motion for post-conviction relief. The Wisconsin Supreme Court denied Kirk's petition for review on December 11, 2018. Dkt. No. 17-7.

## ANALYSIS

This petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315–16 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applies Supreme Court precedent in "an objectively unreasonable manner." *Id.* Review of factual determinations under AEDPA is similarly deferential. The determination of a factual issue made by a state court is presumed to be correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.

This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

4

possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103). Applying these standards to the record before the court, Kirk's claims fail.

**A. Fourth Amendment Claims**

Kirk's first two grounds for relief, related to the justification for and execution of the search warrant, are governed by *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Id.* at 481–82. Kirk had such an opportunity here.

A petitioner has received a full and fair litigation of his claim when (1) he "has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of [his] fourth amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and applied the proper constitutional case law to those facts." *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992). The record shows that Kirk fully litigated his Fourth Amendment claims before trial and in post-conviction proceedings. Prior to trial, Kirk moved to suppress the evidence obtained in the search based on the lack of probable cause for the warrant. The circuit conducted a hearing, denied that motion, and the case proceeded to trial. After his conviction, Kirk unsuccessfully moved to overturn the conviction based on Fourth Amendment violations in obtaining and executing the warrant and ineffective assistance of trial counsel in failing to challenge the no-knock entry. The trial court found that no violation had occurred and denied the motion. Post-conviction counsel then filed a no-merit report, and Kirk responded by again challenging the validity of the warrant and the manner of its execution, and argued for suppression of the resulting evidence. Kirk's arguments were rejected on their merits.

5

Because he had a full and fair opportunity to litigate his Fourth Amendment claims, he is not entitled to federal relief on that basis regardless of the merits.

It should be noted, however, that even if § 2254 relief on his Fourth Amendment claims was not barred by *Stone*, Kirk's claims would still fail. First, the affidavit did in fact disclose that there was an outstanding warrant for Bruntzel, and she was arrested on that warrant. Kirk contends that the affidavit should have also disclosed that Bruntzel had drugs in her possession when she was arrested, but there is no evidence to support his claim, other than a presumably erroneous statement the prosecutor made in the course of an earlier appearance. Even if Bruntzel did have drugs in her possession at the time of her arrest, the affidavit was more than sufficient to provide probable cause for the issuance of the search warrant. The affidavit filed in support of the application for the search warrant clearly disclosed that Bruntzel was "an admitted heroin user and has been since 2013." Dkt. No. 1-2 at 40. Bruntzel and Stephanie Gravedoni, another of Kirk's customers, disclosed to police that Kirk was selling drugs the day before the warrant was issued. While Bruntzel told police she had made two heroin purchases that very day, the other informant, Stephanie Gravedoni, told police she had seen several pounds of marijuana and 10 grams of heroin in his basement within the past few days. In addition to these facts, the affidavit submitted in support of the warrant request disclosed that, while surveilling Kirk's house on January 11, 2014, police observed Jonathon Belongia leave the house after a brief visit consistent with a drug buy. When police pulled Belongia over, police observed him swallow what they believed to be narcotics. A search of the vehicle revealed several needles and paraphernalia commonly used to ingest narcotics. *Id.* at 40–41. Given the totality of this evidence, whether or not Bruntzel had drugs on her person at the time of her arrest would have made no difference to the probable cause determination.

The claim that police violated Kirk's rights by entering his home to execute the search warrant without first knocking on the door and announcing their presence likewise fails on its merits. Consistent with the Wisconsin Supreme Court's decision in *State v. Henderson*, 2001 WI 97, 245 Wis. 2d 345, 629 N.W.2d 613, the trial court found that police had a reasonable suspicion that such an entry was necessary to prevent the destruction of evidence and protect the officers. The officer who conducted the entry not only described his general knowledge of the propensity of drug dealers to destroy evidence in response to officers' announcing their presence and intent to execute a search warrant, he also described a 2010 incident at the same house where it appeared Kirk had flushed drugs down the toilet as police were responding to a distress call involving a drug overdose. Indeed, in this very case, it appears that Kirk flushed some of his drugs down the toilet before police were able to restrain him at the time of the search. Dkt. Nos. 17-27 at 15–39; 17-24 at 69–70. Because the trial court's finding that a no-knock entry was justified was not unreasonable in light of the evidence presented, this court is bound by the trial court's finding that no violation occurred. 28 U.S.C. § 2254(d)(2). Lastly, it should be noted that even if a violation of the rule of announcement had occurred, Kirk would not be entitled to federal relief. The Supreme Court has held that a violation of the requirement that police officers knock and announce their presence before executing a search warrant does not require the suppression of evidence found in the search because the interests so violated have nothing to do with the seizure of the evidence. *Hudson v. Michigan*, 547 U.S. 586 (2006). Thus, even aside from *Stone*, Kirk's Fourth Amendment claims fail.

## B. Lack of Trial Court Jurisdiction

Kirk also claims that the trial court lacked jurisdiction to hear the case because the criminal complaint was based on lies and/or omissions by the police and the prosecutor (ground three).

7

This argument provides no basis for habeas review. Disputes over the allegations of a criminal complaint are to be resolved by trial, as was done here. Whether the evidence was sufficient to support the state's criminal complaint is an issue of state, not federal law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Kirk has cited no case suggesting that his conviction resulted from a violation of the laws or Constitution of the United States.

**C. Prosecutorial Misconduct and Judicial Bias**

Kirk claims he is entitled to federal relief under § 2254 because of prosecutorial misconduct and judicial bias (grounds four and five). Prosecutorial misconduct and judicial bias can amount to a denial of due process. *Parker v. Matthews*, 567 U.S. 37, 45 (2012); *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997). The record here, however, falls far short of establishing such a claim. Kirk raised these claims in his response to the *Anders* no-merit brief filed by his attorney on his appeal, but the court of appeals concluded that his assertions were "conclusory in nature." Dkt. No. 17-4 at 8. A state court's determination that a defendant failed to properly raise a claim by offering only conclusory allegations to support it is an independent and adequate state law ground that precludes federal habeas review. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) ("Pettit's brief is so lacking in organization and substance that for us to decide his issues, we would first have to develop them. We cannot serve as both advocate and judge. In light of Pettit's inadequate briefing of these remaining issues, we decline to address them."); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977) ("[I]t is a well-established principle of federalism that

a state decision resting on an adequate foundation of state substantive law is immune from review in federal courts."). Thus, it would appear that Kirk is not entitled to federal review of these claims.

But again, even on the merits, Kirk's claims of prosecutorial misconduct and judicial bias fail. He contends that the prosecutor testified, contrary to what the police reports show, that Bruntzel had drugs in her possession when she was arrested. As noted above, the prosecutor did make such a statement in the course of a hearing after Kirk had discharged one of the six attorneys that were appointed to represent him over the course of the case. Dkt. No. 17-19 at 14. But the prosecutor was not testifying, and whether he misspoke or not, the question of whether Bruntzel had drugs in her possession at the time of her arrest is irrelevant. She admitted she was an addict and had purchased drugs from Kirk twice that very day. Kirk's argument on this issue is nothing more than a rehash of his argument that the warrant was invalid and a tortured claim that the prosecutor allowed witnesses to testify falsely.

Kirk's claim against the trial judge is that she failed to inquire into his arguments that his attorneys were ineffective after granting their motions to withdraw. But over the course of the pendency of his case, the court had appointed six separate attorneys to represent Kirk. Each of the preceding five had been allowed to withdraw, most of them after Kirk had accused them of incompetence or worse. Dkt. No. 17-23 at 12–14. By the time she got to the sixth attorney, the judge had reached the reasonable conclusion that Kirk was trying to manipulate the court and delay his trial by firing his attorneys. Dkt. No. 17-22 at 24:01–09. The judge was determined to proceed, but as the record shows, she was also determined to be fair.

At the start of jury selection, as she was reading the charges in the information to the jury venire, the judge inadvertently stated that Kirk was charged as a repeater. The prosecutor immediately brought the mistake to the judge's attention, and even though the possibility of

9

prejudice seemed remote since Kirk was also charged with felon in possession of a firearm and Kirk did not object to proceeding, the court excused the jurors and instructed the deputy clerk to call up a new panel for later in the day. Dkt. No. 17-23 at 44–46. The deputy clerk later informed the court that after making 300 phone calls to people who were scheduled for jury duty over the next several weeks and asking them to report early, he was able to recruit only nineteen prospective jurors. Using the authority granted the court under Wis. Stat. § 756.07, the clerk then recruited twelve additional jurors: two from a senior center and ten from the courthouse area for a total of thirty-one. The additional individuals included clerk's office employees and relatives and volunteers from various County offices, including the Register of Deeds, the Sheriff's Department, the Treasurer's office, and the Juvenile Intake office. *Id.* at 50–55. Kirk's attorney objected to proceeding on the ground that the panel did not represent a fair cross-section of the community. *Id.* at 57. The court overruled counsel's objection, noting that he would be given "wide latitude at voir dire as to excluding anybody you want." *Id.* at 58. After a thorough voir dire covering some 65 pages of the transcript, the attorneys took their peremptory strikes and a jury of twelve with one alternate was selected. *Id.* at 62–127. Neither Kirk, nor his attorney offered any objection as to any individual juror. Notwithstanding this fact, Kirk argues that the manner in which the judge addressed the issue also demonstrates judicial bias.

To be sure, a defendant in a criminal case has a right to a fair and impartial jury drawn from a representative cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975) ("We accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation."). But Kirk has failed to make any showing that the venire panel from which his petit jury was selected was not representative of the community at large. His complaint is that twelve of the venire members
10

were not selected at random. "But random selection is not a constitutional requirement; rather, it is a method used to prevent arbitrary attempts to exclude a class of persons from the jury, which is the concern at the heart of the fair cross-section requirement." *Stanley v. Deppisch*, No. 08-cv-0164-BBC, 2009 WL 62155, at *3 (W.D. Wis. Jan. 8, 2009) (citing *United States v. Nelson*, 718 F.2d 315, 319 (9th Cir. 1983)). He has also failed to make any showing that the actual jury that found him guilty was biased. The jurors were carefully examined by his attorney and several were removed for cause. There is no claim that any of the jurors that were recruited by the clerk actually served on the jury that convicted him. In sum, there is no evidence that the jury that found Kirk guilty was biased, a claim Kirk has never asserted. There is certainly no evidence that the trial judge was biased against him. Again, Kirk has failed to clearly cite any clearly established federal law that the Wisconsin courts ignored or unreasonably applied.

### D. Ineffective Assistance of Counsel

Lastly, Kirk requests habeas relief on the ground that both his appellate counsel and trial counsel were ineffective (ground six). Ineffective assistance of counsel claims are reviewed under the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that the standard involves two components. First, the defendant must show that counsel's performance was deficient, that it "fell below an objective standard of reasonableness." *Id*. at 687–88. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unless a defendant makes

11

both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

Superimposing AEDPA's deferential standard for state convictions onto the deferential standard of *Strickland* creates a high bar that is difficult to overcome. The question is not whether the federal court thinks counsel's performance was ineffective and the state court erred. "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington*, 562 U.S. at 105. When relief is sought under § 2254(d) on a claim of ineffective assistance of counsel, the question concerning counsel's performance is not whether counsel's actions were reasonable. "The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id.* Applying that standard here, the court concludes Kirk's claims fail.

**1. Trial Counsel**

Kirk argues that his trial counsel was ineffective in failing to challenge the failure of police to comply with the rule of announcement in executing the search warrant at his home. This claim fails for the simple reason that no violation was shown. As already noted, because the trial court found at the hearing on Kirk's post-conviction motion that no violation had occurred, his trial counsel was not ineffective in failing to raise that issue. The claim also fails because suppression of evidence is not a remedy under federal law for violating the rule of announcement.

Kirk also contends that his trial counsel was ineffective in failing to interview the witnesses listed in the affidavit submitted in support of the search warrant and for failing to pursue all of the discovery requested by Kirk as evidence to undermine probable cause. In his post-conviction motion, Kirk framed his argument as a failure by trial counsel to raise the issue of the validity of the warrant in a suppression motion. As already noted, trial counsel did challenge the validity of

12

the warrant but was unsuccessful. Kirk contends, however, that counsel was ineffective because he failed to obtain all of the police reports concerning the January 11, 2014 arrest of Bruntzel, which he insists would have shown that she was in possession of drugs when she was arrested the night before the search of his home.

There are two problems with Kirk's argument. First, Kirk has failed to offer any evidence that Bruntzel was in possession of drugs at the time of her arrest or that such a report exists. Once again, it should be noted that his claim that Bruntzel did have drugs and that such a report exists appears to be based upon a misstatement by the prosecutor. At a January 15, 2015, hearing on one of Kirk's earlier attorney's motion to withdraw after Kirk filed misconduct charges against her, the prosecutor said that the person police stopped in the vehicle, Bruntzel, had an outstanding warrant for her arrest. The prosecutor continued, "they arrested her, and she had drugs in her possession." Dkt. No. 17-19 at 3, 13–14. Both the prosecutor and Kirk's then attorney acknowledged the reports had been turned over. In fact, it appears that only syringes and paraphernalia were found in Bruntzel's car. Dkt. 1-2 at 30.

The second problem with Kirk's argument is that, as already noted, whether or not drugs were found in Bruntzel's possession is irrelevant. Bruntzel admitted she was an addict and had purchased heroin from Kirk twice earlier that day. From the report of her probation agent, it appears that, at the time she was pulled over, she was trying to get money to buy some more. As the trial court noted in denying Kirk's motion to suppress challenging the validity of the warrant, whether she had drugs at that time or not was irrelevant to the issue of probable cause.

In sum, Kirk's trial counsel was not ineffective in failing to obtain reports that apparently do not exist to prove a fact irrelevant to his case. And his failure to interview witnesses is only deficient if the witnesses had exculpatory information. Kirk has made no showing that they did.

13

He has failed to offer any affidavit or other evidence of what these witnesses would have said that would have helped his case. His claim that his trial counsel was ineffective therefore fails.

### 2. Post-Conviction/Appellate Counsel

Kirk also argues that his appellate counsel was ineffective for accepting "obviously 'manufactured'" documents from the state instead of filing a motion to compel discovery and for concluding in his no-merit report that there were no grounds for contesting the probable cause for the warrant. Habeas Pet., Dkt. No. 1 at 13. It appears, however, that Kirk has not exhausted his state court remedies as to this claim. He did not file a motion in the trial court under Wis. Stat. § 974.06, nor did he file a petition for a writ of habeas corpus in the Wisconsin Court of Appeals pursuant to *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992). A federal court cannot grant relief under § 2254 on any claim as to which the petitioner has failed to exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). But notwithstanding a petitioner's failure to exhaust his state court remedies as to a claim, the court can deny the petition as to that claim in cases where it is clear from the record that it fails on the merits. 28 U.S.C. § 2254(b)(2). This is such a case.

Kirk claims that his post-conviction/appellate counsel was ineffective in failing to raise the foregoing claims on his appeal. But because the court has concluded that each of those claims fails on their merits, it necessarily follows that post-conviction/appellate counsel was not ineffective for failing to raise them in state court. Kirk's claim of ineffective assistance of post-conviction/appellate counsel, like all of his claims, will therefore be dismissed.

### CONCLUSION

For the reasons explained above, Kirk has shown no grounds for habeas relief. Therefore, his petition for a writ of habeas corpus is **DENIED**, and the Clerk is directed to enter judgment dismissing the case. A certificate of appealability will not be granted on any of the grounds in the

petition. I conclude that it is unlikely that reasonable jurists would find that Kirk has made a substantial showing of the denial of a constitutional right.

Kirk is advised that the judgment entered by the Clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4.

**SO ORDERED** at Green Bay, Wisconsin this 29th day of October, 2020.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge